Good morning, Your Honor. I have pleased the Court, Derek Metzger, on behalf of Appellant and Defendant Stephan Baere. This is a case about jurisdiction, about subject matter jurisdiction. And since I'm assigning error, or we're assigning error to Judge Jones' decision on summary judgment, I thought it might make some sense to go through his analysis very briefly to see why he made a mistake in finding subject matter jurisdiction. He cited four, three statutes and a rule. I gather you're not raising the merits at all. In fact, you're conceding that there was fraudulent conduct. The question is, with respect to the rule. I'm not raising the merits of my brief, but that's the decision that we've made. Judge Jones cited, as I said, three statutes and a rule. Statute number one just gave the court, the district court jurisdiction to hear the case. We have no objection to that. Statute number two is the statute in question. That's section 2C2B, which grants subject matter jurisdiction to the commission over certain transactions, contracts, and agreements. The third statute that the judge cited is a prescriptive statute. It just makes it unlawful to violate other statutes. We can claim that that doesn't confer any jurisdiction. That's a prescription. And the fourth item cited is a rule, a commission rule. Well, looking at the 2C, just a second. It's kind of hard to follow. 2C, is that right, 2? 2C. 2C2B. Excuse me. There's so many subsections here. I agree, Your Honor. Let me just read what I think are the relevant provisions of the statute, and then you tell me what your interpretation is. Certainly. This chapter applies to, and the commission shall have jurisdiction over an agreement or contract that is either a contract of sale or an option on such contract and is offered to and so-and-so. In other words, we're talking about an agreement or contract with respect to an option that is offered. Yes. Why isn't that precisely what we have here? Well, they're essentially because there were no offers of options. There were no options in existence. There's no evidence that there were any options available for offer. What this -- But I thought that was the business that you were in, essentially. No. The business that we were in, my client was the sales manager for a company called White Pine Trust. White Pine Trust was the manager of a discretionary fund called the Pinnacle Fund. It was an absolute discretionary fund. White Pine Trust could invest in whatever they chose to invest in. They described this- Well, that's your service argument. True. That, in fact, there weren't any contracts or options or anything. It was just simply a matter of service, which I think is a bit of a stretch. But go ahead. Well, let me back into it this way, Judge. I think what happened here is this. This was an investment essentially in the foreign currency spot market. The Zellner case of the- You're saying that. But the proxy materials and other materials that are in the record sometimes refer to the spot market, but also in other places refer to foreign currency exchange options. Yes, that's true. Referred to. Right. That is said to be- That was part of what was the offer to prospective investors in their firm. I don't believe it was an offer, Your Honor. I believe it was a solicitation to invest funds in a fund that may, under certain circumstances, invest in options. What's the difference between a solicitation and an offer? A solicitation of funds in a discretionary fund where they may or may not invest in options is different than the offer of an option. And we contend that the statute requires that there be- The statute is written in present tense, that there is an option that is offered. There is no option that was offered, period. If the money was invested in your client's fund, did the investor retain any control over where the money went? No. So, as far as he was concerned, it could be a foreign currency exchange option, or it could be a spot market, or it could be nothing. Or it could be something else. These were what they called non-correlative assets, that is, assets that did not correlate to the stock market. And what of the offers that was being made was for the foreign exchange option? Well, we keep going around about this. I contend it's not an offer. I contend it's a solicitation of funds to be deposited in a fund that may. And if you look at what Judge Jones chose to focus on, a portion of the solicitation that says, White Pine Trust utilizes covered call options to protect some positions. And there's also evidence in the record that White Pine Trust on occasion may use options as a hedge. But there is absolutely no evidence in the record, one, that any options were invested in at any time. And secondly, that any option that was in existence was offered to any investor. And we contend that. Do you have authority for that particular point? Is there any governing law that supports your point? Well, the statute itself, Judge. Well, I understand. I understand you're raising a reasonable interpretation of the statute. But my question is, is there any case authority that has so interpreted the statute? Not that I'm aware of. All right. What I started to say earlier was, I believe you're right. Doesn't Topworth go against your position? I'm sorry, Your Honor? Doesn't Topworth go against your position? I don't believe so. We certainly relied on it a great deal when we were in the court below. For the proposition that the court could parse jurisdiction as to those transactions over which there was jurisdiction and not as to those transactions where there weren't jurisdiction. But Topworth was a case like this one where you couldn't parse because there was insufficient evidence. You do that so they found jurisdiction over the entire thing. Well, I think that was where there was clearly jurisdiction as to some transactions and not as to others, but they couldn't differentiate. We're saying there's no jurisdiction as to any transaction in this case. That's different. I'm going to reserve the balance of my time. I do want to say one last thing before I step down. One of the problems we had with the application of Topworth was we asked in every way possible for information regarding the purchase and sale of options. The commission resisted us at every turn, and that resistance was successful. Then the court said there was no way of knowing which portion was invested in options and which wasn't, so they couldn't do the Topworth analysis. They couldn't do the Topworth analysis because we didn't get the information. We were barred from getting the information. We didn't say that information was determinative, but certainly it was relevant, And the court said it was relevant on a number of occasions. May it please the Court. Nancy Page on behalf of the Commodity Futures Trading Commission. If I may, let me jump right in on the questioning here, which is regarding whether options was a core strategy or a mere hypothetical, a mere possibility. On page 88. Well, what difference does it make even if it's a core strategy? Because under the plain language of the statute, you've got to have an agreement that is an option and is offered to somebody. Now, the marketing agreement, there's no question, is not itself an option. So you've got to find an offer for an option. Your Honor. But the question is, does the court have some place else other than in the agreement? If I may call the Court's attention to additional statutory language in the very subsection of 2C2B that the Court's referring to. On Addendum 3 of our brief where we set forth the statutory language, requirement is the sentence continues, the same sentence that refers to account, agreement or transaction, continues in subsection level 2 and says, regarding this, the Court says, I understand the Court's question. This Court says this has to be an existing account, agreement or transaction. And if the Court looks at subsection 2, the sentence continues, that same sentence continues to it, is offered to or entered into. So it has to be an offer of an commodity option. I understand. And in this case, and that's exactly what I hope to persuade the Court to be most concrete on, the prospectus, unless the Court looks on page 88 of the supplemental records. Kagan. The prospectus isn't offering anything. The prospectus discloses that part of the investment strategy, along with spot trading, could be trading in options. So here's, look, here's the heart of my question. Does your position come down, boil down to the fact that because some, because there may be trading in options, that that's enough? Your Honor, no. All right. Then what short of that? Our position is in direct, we disagree respectfully with the Court's factual statements that the customers weren't promised. In particular, their money would be traded in commodity options. Okay. Let's just get clear. Not in the hypothetical. Let me get clear so we've got a clear answer to a hopefully clearer question. Assuming that part of the investment strategy was to invest in options, is that enough? Yes, Your Honor. Okay. How do you square that with the plain language of the statute, which requires an offer in the contemporaneously, an offer or entered into? All of the statutory language connotes a specific activity that's contemporaneously undertaken, not a prospective possibility of some trading in some options, some time. If I may, Your Honor, I do appreciate the Court's question. It's what I'm, hopefully I will satisfy the Court that I understand the question in this answer, if I may. Subsection 2, in the same, is offered to, if you continue to read on Addendum 3 of our brief, to a person, if I may, that is not an eligible contract participant unless the counterparty or the person offering to be the counterparty. Even in that language, we see that Congress is telling us, the Commission, that someone who stands ready to be the counterparty in the commodity options is that sufficient for fraud solicitation. I just don't understand anything you're saying. So you better be simpler. That solicitation fraud is accomplished with the offering. I don't even understand solicitation fraud, okay? The offering is accomplished. I'll use, I'll skew closely to the statutory language here. Okay. That the offering of the contract is accomplished here with a prospective, which says on page 88 of the Supplemental Record Act, so it's language such as, the investments will be made in foreign exchange and futures and options contracts. In fact, the only thing this contract doesn't do is list the three investment vehicles as being all vehicles within our jurisdiction. Two of them are futures and options. One of them isn't. And we rely, in Reliance and Topworth, that throwing the third one in doesn't make it less existentially an offer for a commodity options contract, because in addition, there will also be non-jurisdictional spot for its trading. I would also emphasize, Your Honor, if I may, that in this case, the offer was integral. The non-jurisdictional and jurisdictional option, jurisdictional matter, the commodity options, was integrated into the spot contracts as follows. They said that 10 to 20 percent of the time when we do these spot trades, we will use covered calls, options. So on the Supplemental Record on page 53, when they say we're taking your money and this Court says, well, how do we know, even if they said it might be for options, maybe they would just do foreign currency spots and you, the commission, know you don't have jurisdiction over that. Kagan. Okay. Ms. Page, let me just try again. But their solicitation indicates that every dollar they took in, a share of that would go to commodity options on the basis of their solicitations. Now may I try again? Sorry, Your Honor. Okay. Just tell me in 25 words or less where I can find an agreement that is an option and is offered to the investors in this case. Your Honor. What is the agreement that is an option? Let's just break it down. Your Honor, the prospectus. The prospectus is an agreement for an option. Is that your position? Is an agreement for whichever dollar a share of it is going into commodity options. That's our position. Okay. Your position is that the prospectus is an agreement that is an option. The pages that follow it include an individual and joint account application that was signed and had to be mailed in. Ms. Page, is the government's position that the prospectus in this case is an agreement that is an option? No, it's an offer, Your Honor. Okay. So where is the agreement that is an option? The prospectus is an offer. Your Honor. An offer to invest funds generally, and part of the risk of investing in this fund is that there may be trading and options. Your Honor, in this case, the government is not required to show an option. It's required to show an offer to commodity options. And we again say that the record isn't maybe. It was definite.  Okay. So did I understand you correctly to say that the government is not required to show an offer? It is required to show an offer, but not an option. Your Honor, I'm sorry if I misspoke. Okay. So you're not required to show an option in order to regulate? If we, if there's a solicitation, if there's a fraud in the solicitation of an offer to offer commodity options, it matters not if that money is simply a Ponzi scheme. It matters not if Richard Malthus took every single dollar and placed it in Hawaiian real estate, which clearly the commission does not regulate. Our position is we brought a case of fraud with respect to the offering process, not the actual manipulation or transactions of the options. In fact, if there's anything that we agree with the Cohen on here, it is that this was a diversion scheme, that, in fact, we have no assurance that any of the money ever made the foreign currency commodity options projects. As I stand here today, this Court should assume for purposes of its analysis and its decision that Richard Malthus took every dollar of this and put it in something we clearly don't regulate, real estate, mortgages. We are not expanding our jurisdiction here. This is in our core jurisdiction on fraud. Fraud with respect to the offering process is a jurisdiction the Court has given us. We're in section 2C2B1. Does it give the commission core jurisdiction over fraud? Your Honor, we have jurisdiction over offers in commodity options here. And that triggers, in particular, a section. Kagan. No, you don't. You have jurisdiction over an agreement that is an option and is offered. Your Honor, subsection 2, the sentence continues. It says that it is offered to or entered into with the person. If this Court's reading of subsection little i were correct, then the part of subsection 2, which continues, or the person offering to be the counterparty, contemplating that the agreement never executes, that it's just a solicitation. I'm just looking for an offer here. It would have no meaning. It would have no statutory meaning. And so knowing that that, we must give voice to what Congress meant here. If at most this is inartful because the word offer proceeds in the same sentence after an agreement, a contract, or transaction. Well, the offer and the agreement are not the same thing, are they? An offer and an agreement are not the same thing. I'm sorry, the account or the transaction. I'm sympathetic with Judge Reimer's efforts to be sure that this comes within the statute. I'm wondering whether the word agreement isn't fulfilled with the delivery of the funds by the customer. It's certainly a transaction, Your Honor, in connection with a commodity offer. Well, does that constitute an agreement? Oh, I see. Or a transaction. Yes, but it's not a transaction in foreign currency. The transaction here, the offer. You can rely on transaction. You've got to either come within agreement or contract or you can't survive. Respectfully, Your Honor, we think not, because subsection 2 says that our jurisdiction goes to not just entry into options. Look at subsection 2. It has to be as we expect it, transactions that are offered to or entered into. If Congress wrote transactions offered to or entered into, these were transactions that were offered to customers. In fact, I would emphasize that. Okay, but it's a transaction in foreign currency. Transactions in foreign currency. We're several levels behind foreign currency, are we not? No, in fact, it is standard in our industry for the solicitor to be the account and the off-exchange markets to be the counterparty. That's why subsection 2 continues, unless the counterparty or the person offering to be the counterparty. The domestic solicitor stands as the counterparty, and although they may have second dealings with the interbank market, the commodity option is as between and is settled between the offeror, when they're registered, they're called the futures commission merchant, and the retail customer. That's how, I would assure the Court, these retail customer markets work. Customers don't go and directly deal with a London broker. Their counterparty on an international transaction is the domestic counterparty here that's referenced in 2. And with respect, again, Congress wrote with respect to counterparty 2, counterparty or the person offering to be the counterparty. Is the counterparty pinnacle in this case? Who's the counterparty here? The counterparty here is pinnacle. All right. And I just emphasize, that's the way it works. That's the way it works when we have a duly registered futures commission merchant. At this Court, where we didn't cite cases on this, I didn't know the issue. Well, that may very well be the way it works, but I want to be sure that it comes within the statute establishing the jurisdiction. One of the reasons we ask for oral argument in this case is because we know we have some unique terminology in our statute. And so I'm happy to be here today to tell you that the counterparty in subsection 2 is the FCM that solicits. And that the retail customer's relationship in settling is with that FCM. Here it wasn't an FCM. The counterparty was pinnacle. But lest there be any confusion, is offered to, the transaction is offered to the retail customer, and the counterparty or the person offering to be the counterparty contemplates a POSSE scheme, where someone enters these very complex markets, makes retail solicitations to naive investors who have less than $5 million, that means they're not eligible contract participants, takes their money, and goes nowhere near the international foreign currency markets. We stand on guard for that, too, as surely as the Securities and Exchange Commission stands on guard for international or for securities regulations, where the money never arrives at and into the equities markets at all. All right. Go back up to B little i. The commission shall have jurisdiction over an agreement, contract, or transaction in foreign currency. What is your position with respect to foreign currency? Does that modify agreement and contract and transaction or just transaction? Foreign currency, those are three interchangeable words to give you an idea of a transaction. So, yes, it modifies them all. In particular, foreign currency transaction has been the meaning of subsection 2. But I would emphasize whether it's artfully used. So does it make sense to interpret the statute as saying an agreement in foreign currency? I don't understand the connection between agreement and foreign currency. Transaction in foreign currency, I can understand that. Is contract in foreign currency, agreement in foreign currency? Maybe I've been working in the industry for too long, but, Your Honor, it makes sense to me. My point is that the statute, although, you know, I would prefer for purposes of this for subsection 2 to be integrated into i. You know, the statute is one sentence. It does not end and say agreement and transaction. It continues and says or an offer at the counterpart or the person offering to be the counterpart. Don't get too far away, so we'll miss the tape here. The party, I mean, many subsections down in the statute, Your Honor. Sorry. The sentence continues. It doesn't just refer to transaction and other things. It says an offer with respect to the counterpart or the person who's representing to be the counterpart. I didn't know this issue would come up, but I was sure the Court, if the Court had its clerks. Okay. So how would you read this statute in real words? That's what I often try to do. I just rewrite it by using real words. So you would say chapter applies to a prospectus that is an option and is offered or entered into with pinnacle? Is that the way you would read it? No, Your Honor.  Okay. So how would you read it? No, no, no. Just wait. Can you read this? Can you reread the statute? Yes, Your Honor. Yes. The oral and written offers made to the customers, made to the customers. Counsel, it would really be helpful if you would put it in the frame of reference that Judge Reimer has given you. No. Look at this. This chapter applies to. Just substitute for these words what your contention is in this case. This chapter applies to, and the commission shall have jurisdiction over. Right. A transaction in foreign currency commodity options that is offered to a retail customer by a party or a person, you know, by a party doing the deal with them or offering to do the deal with them, unless that counterparty is one of the following. And frankly, there's a bit of a legislative. They don't. They don't apply. But that's why this is written in that cumbersome way. That's why the offer is in Section 2, because it ruins the legislative history. Congress wanted to go on and modify a counterpart. Your key argument, then, is jurisdiction over a transaction in foreign currency that is a commodity option. I mean, that's the. That is offered. That is offered, yes. That is offered. And it's because of that stuff, I assure the Court, you won't go into in the sub-subsections, that the offer hangs out in the second part of the sentence, because the Court was going to the Congress was going to look at the word counterparty and further modify that. Sotomayor, what's the transaction? What's the transaction in foreign currency commodity that's offered? What is the offer of an option? In this case. In this case, it is offered not as a possibility, but as definitely a part of your investment, both orally and in writing. It's declarations from customers saying that they gave money, believing it would go to investments in foreign currency options. The perspective says that one of the things your money is going into is foreign currency options. At page 53 of these solicitation materials, they say that for every one of your dollars, covered call options are going to be used 10 to 20 percent of the time. They're integral to this, because the idea is we'll soften the risk of spot market transactions, because while we're investing you in naked positions, we won't. We'll have a neutral market strategy. And you have to make a lot more money to do these options with them. So we come back to the question that I tried to start off with, which is that the heart of the government's position is that so long as the investment agency holds out the possibility of trading in options generally, it's not necessary to show any discreet offer to engage in any specific option. Trade. Is that correct? Yes. And, in fact, in our industry, unlike the equities, what typically happens is that customers give over their money, and then experts in the field trade. That's true for even exchange traded futures and options contracts. Well, now, wait a minute. That plays into the argument that opposing counsel is making. This is just a service operation. There are no options being offered. Actually, not, because, in fact, the fact that when you give money to someone to purchase commodity foreign currency options, this is counterintuitive from an equities perspective, it is typical in the industry that they decide which one's at which date, but you are purchasing commodity options and commodity futures. It can change almost daily, minute by minute, so you want an expert doing that for you. But what is certainly the case is this, that when Richard Malkin no money reached any of these critical funds, the websites saying you have this much in value were fictitious numbers. The money never went into discretionary accounts at all for trading. And he talks about a service agreement. Another thing that we all agree on, the records are disputed, is this money never reached Pinnacle Capital Fund. This money was kept by Richard Matthews and spent by him. This money, he talks about it, oh, it was a service agreement. We set up the money and we broadly traded for them very, very discretionarily. It never got there. This is a pure diversion scheme. There's no evidence in this record. That's another reason why we don't care if Richard Matthews spent it on Hawaiian real estate or foreign currency options, because that was his account. That wasn't the customer's account. There's no evidence presented by anyone that a dollar made it into Pinnacle Capital. All right. Thank you, counsel. We've taken you way over time. Mr. Metzger, you have reserved time. Thank you, Your Honor. Let me start from back to front. Counsel's most recent statement is inaccurate. There is evidence in the record that money went into Pinnacle Capital and the trades were made. I apologize for the extensive nature of the records that were submitted to the court, but there's receiver's records in there, there's declarations in there, there's documents in there that show that money went into Pinnacle Capital and trades were made. Respectfully, I think the commission is making a tortured interpretation of this statute. It's pretty clear. It has to be a contract, agreement, or transaction in foreign currency. We could stop right there. There's no contract, transaction, or agreement in foreign currency that was before the district court or before this court. Well, what about the language in the prospectus? The language of the prospectus, again, I respectfully disagree with counsel's characterization and invite the court to read the portions of the prospectus that are cited in our brief. The language in the prospectus says this is a discretionary fund. We may invest in foreign currency. We may invest in options. We have two teams that will be making decisions about what investments will be made. They may use options as a hedge. So it was describing a trading strategy. Now, we may all sit here and say, gee, it would be nice that the Commodity Futures Trading Commission has jurisdiction over this, although I think there are plenty of other agencies that can review this kind of conduct. But that's not what's before this court. What's before this court is a specific jurisdictional grant that must be strictly construed. And there's nothing in the record that says that the standard has been met. As Your Honor asked, there's no option. There's no option being offered. And I will tell you, quite frankly, I was stunned to hear that Pinnacle Capital is the offeree in this matter. One may well ask, that's the fund. I always thought the investors were the offeree, that the idea was to protect the investors, and this prospectus was offering them something, and that's why the CFTC stepped in.  in London for no option that exists. And, again, counsel for the commission, I think, spoke outside the record for a good portion of her presentation about the way capital markets work, what options are, what the CFTC is designed to do, what Congress may or may not have wanted to do. What's before the court is the four corners of the statute, granting subject matter jurisdiction. There was no evidence in the record, and if you read Judge Jones' decision, it's very clear he couldn't find an offer. He strained, and he basically settled on the rule to get him through this thicket. You can't settle on the rule. That's what mass media marketing said. You can't generate, an agency can't generate jurisdiction out of its own rules. So you're back at the statute, and the statutory test has not been met. We'll submit on that, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Rymer, Wardlaw